UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -9  A 9: 45

U.S. DISTRICT COURT
DISTRICT OF MASS.

```
**************************************
JAMES A. ROGERS,                     *
                                     *
              Plaintiff,             *
                                     *
v.                                   *        Civil Action No. 11190-RCL
                                     *
NSTAR ELECTRIC and                   *
KIMBERLY WHITNEY,                    *
                                     *
              Defendants             *
**************************************
```

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### A.    Introduction

The Plaintiff is a former employee of NSTAR Electric and Gas Corporation[1] ("NSTAR") whose employment was governed by a collective bargaining agreement. After NSTAR terminated Plaintiff's employment in May 2001, Plaintiff's labor union proceeded to arbitration under that agreement, challenging NSTAR's decision. In a decision issued in June 2002, the Arbitrator concluded that there was just cause for NSTAR to terminate Plaintiff's employment. Notwithstanding the Arbitrator's decision, and the passage of nearly two (2) years, Plaintiff has brought a ten (10) count complaint, again challenging his termination from employment. Plaintiff's Complaint is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 ("Section 301"). In addition, several counts fail to state claims upon which relief can be granted. Accordingly, the Complaint should be dismissed in its entirety.

---

[1]The Complaint erroneously identifies the Defendant Company as simply "NSTAR Electric".

**B.**    **Background**

The Complaint alleges the following:[2]  Plaintiff became employed by NSTAR[3] in 1986. Between August 2000 and March 2001, Kimberly Whitney, an Employee and Labor Relations Consultant for NSTAR, received a series of five (5) unusual phone calls at work. In the first three (3) calls, she claimed she heard someone whispering her name, and breathing. In February 2001, Ms. Whitney received the fourth call, in which she claimed she heard the person who called masturbating in the background. After this call, the local police and phone company placed a tap on Ms. Whitney's work phone. On March 30, 2001, Ms. Whitney received another call, in which the person calling was breathing. The phone tap showed that Plaintiff had made this call. (See Complaint, pars. 1-11). The Plaintiff never knowingly placed a call to Ms. Whitney, whom he did not know. (See Complaint, par. 13).

Ms. Whitney filed a criminal complaint against Plaintiff in the Wenham District Court. The Clerk Magistrate and District Attorney did not proceed with the Complaint, due to insufficient evidence to issue formal charges. (See Complaint, pars. 14-16).

On May 18, 2001, NSTAR terminated Plaintiff's employment, "based upon the complaint registered by the Defendant Whitney despite no charges were ever brought against the Plaintiff and there was no basis for the charges made by the Defendant Whitney." (Complaint, par. 17).

Plaintiff further alleges that he "was employed under a union contract and exhausted

---

[2] All factual allegations in the Complaint are assumed to be true for purposes of this motion only.

[3] Since NSTAR did not exist until 1999, following the merger of Boston Edison Company and Commonwealth Energy System, Plaintiff is presumably referring to one of these two entities.

all his remedies administratively under said contract without result..." (<u>See</u> Complaint, par. 19). The

union contract was "executed, October 1, 2001, by NSTAR and the Utility Workers Union of

America, A.F.L.-C.I.O., and Local 369, U.W.U.A., A.F.L.-C.I.O., of which the Plaintiff...was a

member at the time in good standing, and aforesaid contract was in full force and effect at the time

of his termination." (<u>See</u> Complaint, par. 39; Exhibit A hereto).[4] The exhaustion of contractual

remedies referred to by Plaintiff includes the decision of an Arbitrator, finding that NSTAR had just

cause to discharge the Plaintiff. (<u>See</u> Exhibit B hereto).[5]

      Plaintiff alleges ten (10) causes of action (all against both Defendants), as follows:

1.     Wrongful termination and breach of the implied covenant of good faith and fair

      dealing (Count I);

2.     Misrepresentation, fraud and deceit (Count II);

3.     Intentional, improper interference with contractual relationship (Count III);

4.     Intentional, improper interference with advantageous business relationship (Count

      IV);

---

[4]Since the collective bargaining agreement is specifically referred to in the Complaint (<u>see</u> par. 39, <u>supra</u>), "[r]eliance on this document does not convert the present motion to a motion for summary judgment under Fed. R. Civ. P. 56." <u>See Stein v Royal Bank of Canada</u>, 239 F.3d 389, 392 (1st Cir. 2001). Further, "when...a complainant's factual allegations are expressly linked - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." <u>Edwin v. Blenwood Associates, Inc.</u>, 9 F. Supp.2d 70, 72 (D. Mass. 1998) (quoting <u>Beddall v State Street Bank and Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998)). Pertinent provisions of the agreement are included in Exhibit A. (<u>See</u> Article V, Management Rights ("If the Local claims that the Company has exercise dits right to...discharge employees in an unjust or unreasonable manner, such claim shall be subject to the Grievance Procedure...")).

[5]This document is likewise properly considered in deciding the present motion. (<u>See</u> footnote 4, <u>supra</u>).

5.    Intentional infliction of emotional distress (Count V);

6.    Negligent infliction of emotional distress (Count VI);

7.    Negligent breach of contract duty (Count VII);

8.    Negligent misrepresentation (Count VIII);

9.    Breach of employment contract (Count IX); and

10.    Slander and libel (Count X).

Plaintiff brought this action in the Plymouth County Superior Court. Defendants removed the action to this Court based on the complete preemption of Plaintiff's claims pursuant to Section 301.

## C.    **Argument**:    **Plaintiff's Claims Should Be Dismissed With Prejudice**.

Plaintiff's employment was governed by a collective bargaining agreement. Pursuant to that agreement, Plaintiff filed a grievance, proceeding to arbitration on whether NSTAR had just cause to terminate his employment. The Arbitrator ruled in favor of NSTAR. The resolution of all ten (10) of Plaintiff's causes of action requires an interpretation of this agreement under well-established labor law principles. Accordingly, Plaintiff's claims are entirely preempted. In addition, for independent reasons, Plaintiff has not stated an actionable claim for several counts.

### 1.    **Plaintiff's Claims Are Preempted By Section 301**.

Plaintiff acknowledges that when his employment with NSTAR ended, he was covered by a collective bargaining agreement. All of Plaintiff's claims concern his alleged "wrongful termination" from employment, and accordingly are preempted by federal labor law.

The standards governing preemption of claims by Section 301 are well-established. Section 301 provides in pertinent part:

4

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting
> commerce as defined in this chapter...may be brought in any district
> court of the United States having jurisdiction of the parties, without
> respect to the amount in controversy or without regard to the
> citizenship of the parties.

A plaintiff's state law claim is preempted by Section 301 if the resolution thereof necessarily entails a review of the governing collective bargaining agreement. United Steelworkers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362 (1990); Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988). As stated by the First Circuit, Section 301

> preempts a state law claim, whether founded upon the state's positive
> or common law, if a court, in passing upon the claim, would be
> required to interpret the collective bargaining agreement. In practice,
> this test boils down to whether the asserted state-law claim plausibly
> can be said to depend upon the meaning of one or more provisions
> within the collective bargaining agreement.

Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997), cert. denied, 523 U.S. 1123 (1998) (internal citation omitted). The court further explained:

> [A] state-law claim can 'depend' on the 'meaning' of a collective
> bargaining agreement in two ways. First, a claim so qualifies if it
> alleges conduct that arguably constitutes a breach of a duty that arises
> pursuant to a collective bargaining agreement. See United
> Steelworkers v. Rawson, 495 U.S. 362, 369 (1990) ('[A] state-law
> tort action against an employer may be pre-empted by §301 if the duty
> to the employee of which the tort is a violation is created by a
> collective-bargaining agreement and without existence independent
> of the agreement.'). Second, a claim so qualifies if its resolution
> arguably hinges upon an interpretation of the collective bargaining
> agreement. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220
> (1985) (finding Section 301 preemption 'when resolution of a state-
> law claim is substantially dependent upon analysis of the term of an
> agreement made between the parties in a labor contract.'). If a state-
> law claim depends on the meaning of the collective bargaining
> agreement in either of these ways - that is, under Rawson's 'duty'
> rubric or under Allis-Chalmers's 'interpretation' rubric - it is
> preempted.

5

131 F.3d at 26. In <u>Flibotte</u>, the court found that the plaintiff's state-law negligence and intentional infliction of emotional distress claims against his former employer were preempted by Section 301 because they required inquiry into the employer's rights and obligations under the applicable collective bargaining agreement.

Applying either of the standards for preemption set forth in <u>Flibotte</u>, Section 301 preempts all ten (10) counts of Plaintiff's Complaint:

<b>Count I:    Wrongful Termination and Breach of the Implied Covenant of Good Faith and Fair Dealing</b>.

Count I alleges that "[a]s a result of the conduct and action set forth above, the defendant NSTAR breached the implied covenant of good faith and fair dealing" found in Plaintiff's "written employment contract" with NSTAR (<u>see</u> Complaint, par. 21). In other words, NSTAR breached a covenant which allegedly can be implied from the collective bargaining agreement. This claim, then, "alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement." <u>See</u> <u>Flibotte</u>, 131 F.3d at 26. Moreover, the resolution of the claim "arguably hinges upon an interpretation of the collective bargaining agreement," <u>see</u> <u>id</u>., because it must be decided whether Plaintiff was discharged for just cause under the governing agreement. Accordingly, Section 301 preempts this claim. <u>See</u> <u>Mulvihill v. Spalding Sports Worldwide, Inc.</u>, 184 F. Supp.2d 99, 103 (D. Mass. 2002) (Section 301 preempts claims for breach of implied covenant of good faith and fair dealing; "[i]t is hard to see how a claim for breach of an implied covenant of good faith could be resolved without an analysis of, or the determination of the meaning of, 'proper cause' in the employment agreement.").

<b>Count II:    Misrepresentation, Fraud and Deceit</b>

In Count II, Plaintiff alleges that NSTAR and Ms. Whitney "participated in

6

intentional misrepresentations regarding the conduct of the Plaintiff as set forth above with no evidence to support such claims and further with [sic] in spite of the rejection of aforesaid claims of the defendant Whitney, the Defendant terminated [Plaintiff] based on the aforesaid false statement of Whitney with full knowledge that said accusations had no legal basis since the Defendant, NSTAR, provided its own legal counsel to Whitney at the District Court hearing." (Complaint, par. 23).

As with Count I, Plaintiff alleges misconduct -- intentional misrepresentations, and wrongful termination based thereon -- which "arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement." See Flibotte, 131 F.3d at 26. Moreover, the wrongfulness of NSTAR's conduct depends on whether it breached the contract provisions on discharge. (See Exhibit A hereto). Accordingly, Count II is preempted by Section 301.

**Counts III, IV**:       **Intentional Improper Interference With Contractual Relations / Intentional Improper Interference With Advantageous Business Relationship.**

In Count III, Plaintiff alleges that Ms. Whitney's "interference with [Plaintiff's] contractual relationship with NSTAR was wrongful and intentional and done through improper motives and means so as to cause [Plaintiff] to sustain harm and damages as a result of their actions." (Complaint, par. 25). Likewise, Count IV (par. 27) alleges that Plaintiff "had a written employment contract with NSTAR," and that Ms. Whitney "knowingly and/or wrongfully attempted to and did interfere with [Plaintiff's] advantageous business relationship with NSTAR."

Based on these allegations, it is apparent that Ms. Whitney's misconduct breached a duty that NSTAR owed Plaintiff under the collective bargaining agreement. Moreover, the supposed wrongfulness of that conduct (which interfered with Plaintiff's rights under the collective

7

bargaining agreement) depends upon an interpretation of that agreement. (See Exhibit A hereto). Accordingly, this claim is preempted. See Magerer v. John Sexton & Co., 912 F.2d 525, 531 (1st Cir. 1990) ("The determination of whether [a supervisor] induced [the employer] to break its employment contract with plaintiff would require the court to decide whether [the employer] was entitled to discharge plaintiff under the terms of the collective bargaining agreement. In other words, the interference with contractual relations claim would require an interpretation of the collective bargaining agreement. It is therefore preempted by Section 301."); Acciavatti v. Professional Services Group, Inc., 982 F. Supp. 69, 76 (D. Mass. 1997) ("The ultimate determination of whether [the employer] 'broke' the contract and whether [a supervisor] improperly induced [the employer] to do so turns on an initial determination of whether [the employer] was entitled to discharge [the plaintiff] under the CBA's terms. In effect, this claim requires direct interpretation of the CBA and is, therefore, preempted by Section 301."). Accord, Mattis v. Massman, 355 F.3d 902, 906-907 (6th Cir. 2004) (Section 301 preempts claim for interference with advantageous economic relationship; "the question of whether [a supervisor] 'interfered' with [plaintiff's] business relationship would require us to delve into the rights and responsibilities of plant supervisors under the CBA."); Steinbach v. Dillon Companies, Inc., 253 F.3d 538, 541 (10th Cir. 2001) (Section 301 preempts tortious interference claim; "[i]n this case, whether the store manager was justified in calling plaintiff back to work and instituting disciplinary proceedings still requires evaluation [of] the manager's authority under the collective bargaining agreement, and therefore the issue is preempted under §301 of the LMRA. The district court was correct, therefore, in finding plaintiff's tortious interference claim preempted.").

8

**Counts V, VI:**        **Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress**

Count V alleges that "[t]he [D]efendants through their conduct, which was extreme and outrageous, as set forth above have intentionally caused [Plaintiff] to suffer emotional distress as demonstrated by physical manifestations." (See Complaint, par. 27). Count VI alleges the same misconduct, based on negligence. (See Complaint, par. 31). The "extreme and outrageous" conduct plainly refers to the wrongful termination alleged in the Complaint. As a result, this count should be dismissed for the reasons discussed above, namely that Plaintiff alleges misconduct in violation of duties created by the collective bargaining agreement. Moreover, whether the alleged conduct violated the agreement requires an interpretation thereof. See Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d at 27-28 (claim of intentional infliction of emotional distress preempted; employer's "rights and obligations under the collective bargaining agreement are obviously central not only to an inquiry into [the employer's] intentions, but also to an inquiry into whether [the employer] conducted itself in a sufficiently outrageous manner to give rise to liability under state tort law."; in addressing preemption of negligence claim, court noted that "a plaintiff cannot skirt section 301 preemption by the simple expedient of recharacterizing an employer's substandard performance of duties that devolve upon it pursuant to the terms of the collective bargaining agreement as a tort."); Mattison v. Massman, 355 F.3d at 908 ("determining whether [supervisor's] alleged harassment constituted 'outrageous conduct' would force us to look to the CBA."); Jenkins v. Area Cooperative Education Services, 2004 WL 413267 (D. Conn. 2004) (finding that Section 301 preempts claims for both intentional and negligent infliction of emotional distress).

**Count VII:**        **Negligent Breach Of Contract Duty**

Count VII of the Complaint alleges (par. 33) that "[b]ased upon the conduct of the

9

defendants, all defendants have negligently breached their contractual duties to the plaintiff. The defendants were obligated to exercise due care in the performance of their duties and have negligently and carelessly breach their duties causing significant harm, injury and damages to [Plaintiff]." Whether Defendants breached contractual duties to Plaintiff requires an interpretation of the duties imposed by the collective bargaining agreement. Moreover, this count alleges conduct in breach of that agreement. Preemption is clearly called for under these circumstances.

### Count VIII:    Negligent Misrepresentation

Count VIII alleges (at par. 35) that "[t]he defendant NSTAR failed to exercise reasonable care and competence in relying upon claims made against [Plaintiff] by the Defendant Whitney, and supported such misrepresentations to a court of law and acted upon said misrepresentation by terminating Plaintiff." As with his other claims, Plaintiff alleges conduct in breach of duties created by the collective bargaining agreement. Moreover, the collective bargaining agreement must be interpreted in order to determine to what extent NSTAR did not "exercise reasonable competence in relying upon" the alleged misrepresentations resulting in Plaintiff's termination. Misrepresentation claims have been held to be preempted under similar circumstances. See, e.g., Carter v. Ford Motor Co., 121 F.3d 1146, 1149 (8th Cir. 1997) (claims of intentional infliction of emotional distress and fraudulent / negligent misrepresentation preempted by Section 301; "a determination on the merits of these state law tort claims would require the court to determine whether [plaintiff's] discharge was warranted under the terms of the collective bargaining agreement.").

### Count IX:      Breach of Employment Contract

Count IX alleges that NSTAR terminated Plaintiff's employment "in direct violation

of the Plaintiff's contract." (See Complaint, par. 38). This claim is plainly preempted by Section 301.

### Count X:    Slander and Libel

Count X of the Complaint alleges that "Defendants did knowingly state and publish false statements accusing the Plaintiff of committing a criminal act, which has detrimentally affected his reputation in his work community and makes reemployment extremely difficult." (See Complaint, par. 42). The allegedly false statements (which allegedly resulted in Plaintiff's termination) would arguably breach duties to Plaintiff owed under the collective bargaining agreement. Resolution of this issue, in turn, would require consideration of the collective bargaining agreement. Accordingly, this claim should be preempted. See Garley v. Sandia Corp., 236 F.3d 1200, 1211 (10th Cir. 2001) ("in order to determine whether [plaintiff] was defamed by [the employer's] actions, the court would inevitably have to examine [the employer's] rights and obligations under the CBA to decide whether [the employer's] actions were authorized; §301, however, preempts state causes of action from permitting this sort of inquiry.").

Preemption of all these claims must result in the dismissal of the Complaint. As noted above, Plaintiff's labor union, Local 369 of the Utility Workers Union of America, brought to arbitration the question of whether NSTAR had just cause to terminate Plaintiff's employment. The arbitration panel ruled in NSTAR's favor, by award dated June 22, 2002. (See Exhibit B hereto). In light of this adverse ruling, review of the arbitral decision could have been sought pursuant to Massachusetts law, or the Federal Arbitration Act ("FAA"). M.G.L. c.150C,§§11(b), 12(a) prescribes a thirty (30) day limitations period for seeking review of an arbitral decision, while

11

the FAA prescribes a three-month period for initiating such review. See 9 U.S.C. §12. Plaintiff

plainly has not sought such review. Moreover, the present action, even if treated as a request for

review, falls well outside the applicable limitations period provided by federal and state law.

Accordingly, all of Plaintiff's claims should be dismissed.

2.    **Several Of Plaintiff's Claims Are Subject To Dismissal On Independent Grounds**.

In addition to being preempted by federal labor law, several of Plaintiff's claims fail

to state actionable claims on independent grounds, as discussed below:

**Count I**:    **Wrongful Termination and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count I alleges that "NSTAR breached the implied covenant of good faith and fair

dealing." (See Complaint, par. 21). Such a claim is unavailable to employees such as Plaintiff who

are covered by collective bargaining agreements. See Azzi v. Western Electric Co., 19 Mass. App.

Ct. 406, 410, 474 N.E.2d 1166, 1169, further appellate review denied, 394 Mass. 1103, 478 N.E.2d

1274 (1985) ("'Since there is an explicit contractual provision giving the employee greater protection

than the implied covenant, there is no need to imply the covenant.'") (quoting Bertrand v. Quincy

Market Cold Storage v. Warehouse Co., 728 F.2d 568, 571 (1st Cir. 1984)); Mulvihill v. Spalding

Sports Worldwide, Inc., 184 F. Supp.2d at 103 ("Because plaintiffs' collective bargaining agreement

provides him...with greater protection than the implied covenant, there is no need to imply it.").

Moreover, even when available, a claim for breach of the implied covenant of good

faith and fair dealing only lies against an employer "for unpaid compensation if the employee is

terminated in bad faith and the compensation is clearly connected to work already performed." See

Harrison v. NetCentric Corp., 433 Mass. 465, 473, 744 N.E.2d 622, 629 (2001). Plaintiff alleges

12

no such facts in his Complaint. Accordingly, this count must be dismissed.

**Counts V and VI**:    **Intentional Infliction of Emotional Distress,**
**Negligent Infliction of Emotional Distress**

Counts V and VI, alleging intentional and negligent infliction of emotional distress must be dismissed as to NSTAR because the Workers' Compensation Act is the exclusive remedy for such alleged wrongdoing.   Under M.G.L. c.152, §24, "[a]n employee shall be held to have waived his right of action at common law...in respect to an injury that is compensable under this chapter, to recover for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right."   Absent such notice,[6] "G.L. c.152, §26 bars common law actions against employers where (1) the plaintiff is shown to be an employee; (2) her condition is shown to be a personal injury within the meaning of the workers' compensation act; and (3) the injury is shown to have arisen out of and in the course of her employment."   Brown v. Nutter, McClennen & Fish, LLP, 45 Mass. App. Ct. 212, 214-215, 696 N.E.2d 953, 955 (1998).

All these criteria are met in this action.   First, Plaintiff was an employee at all pertinent times (see Complaint, pars. 1, 39).   Second, the emotional distress alleged by Plaintiff "is a personal injury, compensable under the act."   See Brown v Nutter, McClennen & Fish, LLP, 45 Mass. App. Ct. at 215 (holding that Workers' Compensation Act bars claims of intentional infliction of emotional distress); Green v. Wyman-Gordon Co., 422 Mass. 551, 558-561 (1996) (claims of both negligent and intentional infliction of emotional distress barred by Act).   Third, Plaintiff's alleged injuries arose from her employment.   This final component of the analysis "is to be broadly construed, so that an injury which arises 'out of the employment looked at in any of its aspects' is

_____

[6]No such notice is alleged in Plaintiff's Complaint.

13

subject to the act's exclusivity provision." See Brown 45 Mass. App. Ct. at 215 (citation omitted).

The allegations in Plaintiff's Complaint show that the alleged injuries all arose out of Plaintiff's

employment relationship with NSTAR. Accordingly, both those counts must be dismissed. See

Grant v. John Hancock Mutual Life Insurance Co., 183 F. Supp.2d 344, 366 (D. Mass. 2002)

(Workers' Compensation Act bars claims for negligent infliction of emotional distress); Hinchey v.

NYNEX Corp., 979 F. Supp. 40, 45 (D. Mass. 1997) (holding that act bars claims of intentional and

negligent infliction of emotional distress).

Similarly, the claim against Ms. Whitney for negligent infliction of emotional distress

is barred by the Workers' Compensation Act. See Morehouse v. Berkshire Gas Co., 989 F. Supp.

54, 65 (D. Mass. 1997).

The claim for negligent infliction of emotional distress must also fail (as to both

Defendants) because Plaintiff has not alleged that his distress caused or was caused by some physical

injury, or that the physical injury was "manifested by objective symptomatology" as supported by

"expert medical testimony." See Sullivan v. Boston Gas Co., 414 Mass. 129, 132-135, 605 N.E.2d

805, 807-808 (1993).

Moreover, the claim of intentional infliction of emotional distress against Ms.

Whitney fails to state a claim. To state an actionable claim, Plaintiff must allege conduct which

"was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" See

Richey v. American Automobile Association, 380 Mass. 835, 838, 406 N.E.2d 675, 677-678 (1980)

(quoting Restatement (Second) of Torts, §46, comment d (1965)).

The facts alleged in the Complaint do not demonstrate that Ms. Whitney's supposed

14

conduct could be viewed as sufficiently extreme and outrageous to state an actionable claim. As first defined in Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315 (1976), extreme and outrageous conduct "meant more than workaday insults, annoyances, or even threats and petty oppressions. It means, for example, a high order of reckless ruthlessness or deliberate malevolence that, as [Agis] and [Foley v. Polaroid Corp, 400 Mass. 82, 508 N.E.2d 72 (1987)] say, is simply intolerable." Conway v. Smerling, 37 Mass. App. Ct. 1, 8, 635 N.E.2d 268, 273 (1994). Courts regularly hold that the "profoundly shocking conduct" required to state a valid claim, id., has not been alleged, requiring a claim's dismissal. See Richey v. American Automobile Association, 380 Mass. at 839, 406 N.E.2d at 679 (no claim stated for dismissal of an employee after death of parent, and hospitalization for health problems; "if the present facts should be held to qualify a discharged employee for relief, then a new practical definition might have to be given to employment theoretically terminable at will."); French v. United Parcel Service, Inc., 2 F.Supp. 2d 128, 132 (D. Mass. 1998) (claim dismissed that employer had badgered an employee about an off-duty incident, and repeatedly sought to contact mental health professionals treating him for depression); Guckenberger v. Boston University, 957 F. Supp. 306, 318 (D. Mass. 1997) (claim dismissed despite allegations that university had imposed a discriminatory accommodations policy, and created a hostile environment for student with learning disabilities).

Plaintiffs' allegations against Ms. Whitney are equally deficient to state a valid claim. The allegations of outrageous conduct establish, at most, that defendants acted in a "bad, unjust, and unkind" manner toward him. See Richey, 380 Mass. at 839, 406 N.E.2d at 678. There is no allegation that Ms. Whitney somehow conspired to have Plaintiff's number appear on the telephone tap, but only that she erroneously concluded therefrom that Plaintiff had made the calls in question.

15

None of these allegations even remotely approach the requisite standard of extreme and outrageous conduct.

**Count VII:    Negligent Breach of Contract Duty**

This cause of action is not recognized in Massachusetts. Accordingly, this count must be dismissed. See Ross v. Raytheon Co., 14 Mass. L. Rptr. 27, 30 (2001) (negligent breach of contract "is not a recognized cause of action in the Commonwealth of Massachusetts.").[7]

**D.    Conclusion**

For all the above reasons, Plaintiff's Complaint must be granted and the Complaint dismissed, with prejudice.

---

[7]In addition, several of Plaintiff's claims are not properly brought against an employer or individual. Thus, Ms. Whitney is not alleged to have employed Plaintiff, and thus cannot be liable for wrongful termination of his employment (Count I), negligent breach of contract duty (Count VII), or breach of contract (Count IX). NSTAR cannot be held liable for interference with its own alleged employment contract with Plaintiff (Counts III, IV). See Gram v. Liberty Mutual Insurance Co., 384 Mass. 659, 663 n.3, 429 N.E.2d 21, 24 n.3 (1981).

16

Respectfully submitted,

NSTAR ELECTRIC and KIMBERLY WHITNEY,

By their Attorneys,

MORGAN, BROWN & JOY, LLP
One Boston Place
Boston, MA 02108
(617) 523-6666

By:_____
      Keith H. McCown
      B.B.O. #329980
      Robert P. Morris
      B.B.O. #546052

Dated: June 9, 2004

## CERTIFICATE OF SERVICE

I, Robert P. Morris, certify that on June 9, 2004, I caused to be served a copy of the within pleading by first class mail on counsel for the Plaintiff, Joseph R. Gallitano, Gallitano & Associates, 34 Main Street Extension, Suite 202, Plymouth, MA 02360.

_____
Robert P. Morris

17