UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES A. ROGERS<br><br>Plaintiff,<br><br>v.<br><br>NSTAR ELECTRIC AND GAS CORPORATION<br>AND KIMBERLY WHITNEY<br><br>Defendants. | )<br>)<br>)<br>)<br>)  C.A. No. 11190-RCL<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF JAMES A. ROGER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1. The plaintiff, James A. Rogers, hereinafter referred to as Rogers, is an individual, residing at 234 Sandwich Street, Plymouth, Plymouth County, Massachusetts.

2. The Defendant NSTAR Electric, hereinafter referred to as NSTAR, is a duly organized corporation with a principal place of business at One NSTAR Way, Westwood, Norfolk County, Massachusetts, 02090-9230.

3. The Defendant, Kimberly Whitney, hereinafter referred to as Whitney, is an individual residing at 52 Old Colony Drive, Mashpee, Massachusetts, 02649. At all times relevant in this complaint Whitney was the Employee and Labor Relations Consultant at NSTAR.

## FACTS

4. On or about April 28, 1986, the plaintiff Rogers commenced his employment with the Defendant NSTAR. At all times relevant hereto Rogers had specific written and/or implied terms of employment with NSTAR.

1

5. On or about August 30, 2000 the Defendant Whitney received a phone call at work. The person on the other end of the phone whispered, "Hi Kim, how are you" and "No, Kim, don't hang up now" and said nothing else.

6. The Defendant Whitney did not recognize the voice at all, so after a moment she hung up the phone.

7. In December of 2000 the Defendant Whitney received another call at work, this time there was no whispering on the other end of the phone.

8. In January of 2001 the Defendant Whitney received another phone call at work. This time there was breathing on the other end of the phone.

9. In February of 2001 the Defendant claimed she heard the person on the other end of the phone masturbating in the background.

10. The Defendant Whitney notified NSTAR security and drove to the Wareham Police Department to file a complaint.

11. The Wareham Police Department and Verizon placed a tap on the Defendants work phone.

12. On March 30, 2001 another call came in and the person on the other end of the phone was breathing.

13. The Defendant activated the phone tap and notified NSTAR security and they notified the Wareham Police.

14. The Wareham Police received a printout from Verizon that indicated that the last call came from an employee of NSTAR, James Rogers, the Plaintiff herein.

2

15. The Plaintiff's girlfriend also worked at the same office complex of NSTAR and it was well known that the telephone switching system was often in error connecting people to the wrong party in error.

16. Further only one instance of a phone call to the Defendant Whitney was ever traced indicating it could have come from the Plaintiff herein, far below the minimum of three calls required to establish a valid trace; and the Plaintiff never knowingly placed a call at anytime to the Defendant Whitney since he did not know her or had ever talked to her before this incident alleged by her accusing him of making annoying phone calls to her.

17. On May 11, 2001 the Defendant Whitney assisted by counsel for the Defendant NSTAR, attended a hearing before the Clerk Magistrate of the Wareham District court, based upon accusations made by the Defendant, Whitney, against Rogers for annoying phone calls and criminal harassment.

18. After a full probable cause hearing the Clerk Magistrate ruled there was no evidence to warrant the issuance of formal charges against the Plaintiff Rogers since no proof was produced that identified him in any way as a person making annoying calls or that there even were any phone calls made as complained by the Defendant Whitney.

19. The Defendant Whitney appealed the Clerk Magistrate's ruling to a District Court Judge, but the District Attorney's office refused to bring the matter forward due to a lack of sufficient evidence.

20. On May 18, 2001 the Plaintiff, Rogers was terminated from NSTAR, based upon the complaint s registered by the Defendant Whitney despite no charges were

ever brought against the Plaintiff and there was no basis for the charges made by the Defendant Whitney.

21. As result of the false allegations made against him by Whitney and the wrongful termination of his employment by NSTAR, Rogers has suffered irreparable harm to his reputation making reemployment almost impossible, has suffered loss of income of salary and benefits, of a minimum of $50,000.00 per year and now in excess of $150,000.00.

22. The Plaintiff was employed under a union contract and exhausted all his remedies administratively under said contract without result since the causes of action addressed herein are not union related issues but personal employment issues; nevertheless the Plaintiff is entitled to all the benefits and protections under contract law afforded to anyone who is employed pursuant to a written contract.

## THE STANDARD OF REVIEW

In ruling on a motion to dismiss or motion for judgment on the pleadings, all of the allegations of the complaint and inferences therefrom must be taken as true. Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 388 (1975). The Court cannot dismiss the complaint unless it is clear that under no circumstances can the plaintiff state a claim. "A complaint should not be dismissed merely because it suggests a novel legal theory of recovery," and thus a plaintiff "need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." Bell v. Mazza, 394 Mass. 176, 183-84 (1985). Under these standards, the motion should be denied.

## COUNTS I, VII and IX STATE BREACH OF CONTRACT CLAIMS

Rogers had a bundle of employment rights: under his individual employment contract, under the common law, under state and federal statutes, under the state and federal constitutions, and under the CBA, for a CBA is a written agreement between a union and a company – "and the ... members of that ... union ... [are] entitled to the benefits of that written agreement." Bakery & Confect. Workers v. Hall Baking Co., 320 Mass. 286, 289 (1946). Accord, United Protective Workers of America v. Ford Motor Company, 194 F.2d 997, 1001 (7th Cir. 1952) (Illinois law recognizes the "right of a member of a union who has been injured by a breach by his employer of the collective bargaining agreement to sue to recover damages"); MacKay v. Loew's Inc., 182 F.2d 170, 172 (9th Cir. 1950) (under California law, employee, "in addition to having rights under his individual contract of employment, may sue directly on the collective bargaining contract as a third party beneficiary to enforce the provisions in the contract which have been made for his benefit").

In Balsavich v. Local 170, International Brotherhood of Teamsters, 371 Mass. 283 (1974), employees sued their employer for violating a seniority provision of their CBA. The employees' amended complaint was dismissed on a Rule 12(b)(6) motion, but the Supreme Judicial Court reversed. The Court ruled that the employees had alleged "broadly and vaguely a breach of contract by the employer." Id. at 285. Thus, even if Count I is viewed as a claim which Rogers "struggle[s] to assert," id. at 284, and is considered "a quite unsatisfactory pleading, id. at 287, it asserts "a recognizable legal theory ... and can be said to state a claim." Id.

Defendant has not cited any First Circuit decisions in support of its position. Significantly, the continued viability of the sole Massachusetts case interpreting the Act in a manner supportive of Defendant's position, O'Brien v. Conrail, 972 F.2d 1 (1st Cir. 1992), has been questioned by the Court which authored the underlying Summary Judgment decision (Young, J.). As stated in LaRosa v. United Parcel Service, Inc., supra, 3 F. Supp. 2d at 146.

State statues are not preempted by federal law. Mass. Electric Co. v. MCAD, 375 Mass. 160, 173 (1978).

Under any interpretation, the plaintiff's statutory claim for retaliation and her common law claim of fraud, deceit and misrepresentation have no basis in the collective bargaining agreement. See LaRosa, supra, 23 F. Supp.2d at 142 fn.5 (discussing 9th Circuit decision that retaliation claim has nothing to do with contract enforcement and interpretation). The Plaintiff has not brought any claims against his Union.

The presumption is against preemption and the burden is on Defendant as the party seeking preemption. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) and cases cited; LaRosa v. United Parcel Service, Inc., 23 F. Supp. 2d 136, 141 (1998) and cases cited.

Massachusetts does not limit union employees to their collective bargaining agreement on the issue of discrimination, but rather have determined that they have an independent source of rights founded in the discrimination statues of the Commonwealth. City of Boston v. MCAD, 39 Mass. App. Ct. 234, 238 (1995); School Comm. of Brockton v. MCAD, 377 Mass. 392, 399 (1979). See Blanchette v. School Committee

of Westwood, 427 Mass. 176, 183 (1998) (Union cannot bargain away individual's statutory discrimination rights).

As a result, they have found that the state statutes are not preempted by federal law. Mass. Electric Co. v. MCAD, 375 Mass. 160, 173 (1978).

"Federal courts in the First Circuit have permitted state law discrimination claims to survive" preemption challenges under §301 of the Labor Management Relations Act. Moriearty, Adkins, Rubin & Jackson, 45 Mass. Practice Series "Employment Law" §1.13 (2002 Supp. at 26). E.g., Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 171 (1st Cir. 1998), Rocheleau v. Brockway-Smith Co., 1999 WL 172813 (d. Mass).

When a claim turns on factual questions about an employer's conduct and motives, preemption is not appropriate. Id. At 261. Here, the claims of discrimination under state law involve just such an inquiry. E.g., LaRosa v. United Parcel Service, Inc., supra, 23 F. Supp.2d at 147-48 (age discrimination analysis requires a factual inquiry which takes it outside the collective bargaining agreement; preemption therefore inappropriate). Further, the Court in Hawaiian Airlines, determined that state law rights which exist "independent of" the collective bargaining agreement are not preempted. 512 U.S. at 260. The Court reiterated that "even if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement of §301 preemption purposes." Id. at 262.

In fact, however, in applying the case law even "reference" to the provisions of the CBA does not require preemption; it is only when the Court would have to interpret

7

the provisions. Plaintiff is not asking for interpretation-he is asking for fairness. The Breach of Contract by NSTAR was the act of terminating the Plaintiff for something not covered by the CBA and activities that are totally unrelated or governed by the CBA.

The Plaintiff's complaint is essentially a complaint in equity. As set forth in the Court decisions referenced above, the plaintiff contends that it is the factual conduct of the Defendants that is at issue not the terms of his employment contract. Like the cases involving state statutory rights and constitutional rights which the court as set forth aforesaid, cannot be preempted by the federal statutes governing the interpretation of collective bargaining agreements, Plaintiff contends that his equitable rights are akin to statutory rights and are grounded in long standing equity standards as pertains to some one in a contractual relationship.

The Plaintiff pleads the fact that he is under written contract only for the sake of distinguishing himself from a mere employee at will. As set forth above he has independent individual contractual rights that do not require interpretation of the collective bargaining agreement. Therefore the case law sighted by the Defendant is irrelevant to the issues presented in Plaintiff's complaint. This entire matter does not even belong in Federal Court because there are no federal issues to be decided.

## COUNTS II THROUGH VI AND COUNT VIII AND COUNT X MATTERS NOT RELATED TO THE COLLECTIVE BARGAINING AGREEMENT

Certainly none of the counts against the Defendant Whitney belong in the Federal Court since nothing alleged by the Plaintiff regarding the conduct of the Defendant Whitney has anything to do with the collective bargaining agreement or with his employment with the company. The matter between the Plaintiff and the Defendant Whitney is a private dispute not involving the employment of either party until Whitney

exercised her influence as an executive in the company to intercede in her behalf. Whitney failed to gain a criminal complaint to issue against Rogers. Instead of exercising any rights she had for a civil remedy she interfered with the Plaintiff's employment and used her influence in the company to get him fired. These actions are all outside the coverage of any collective bargaining agreement and have nothing to do with any federal statutes governing collective bargaining agreements.

If the Defendant Whitney was concerned about the Plaintiff posing a threat to her and the possibility of further harassment allegedly by him, she could have sought a protective order Under M.G.L. Chap. 209 A, but she did not. Instead she resorted to the extreme and outrageous behavior of getting him terminated from his job. She got him fired after 15 years of employment in the same job as lineman with a clean record for good service to Commonwealth Electric and NSTAR, once it took over Commonwealth Electric. Such conduct certainly meets the standard of extreme and outrageous set forth in Agis v. Howard Johnson Co, 371 Mass.140, 355 N.E.2nd 315(1975), as does the conduct of NSTAR by inserting itself in this dispute to the point of furnishing counsel for Whitney to prosecute her application for a criminal complaint to issue against the Plaintiff. In addition NSTAR took action against the Plaintiff by firing him with a complete lack of evidence. Annexed hereto are the transcripts of the Clerk Magistrate's hearing, marked Exhibit A and made a part here of, and the Arbitration Transcript, Marked Exhibit B and made a part here of.

Even a quick perusal of both transcripts will indicate to any reader that there was no evidence that the Plaintiff was the person who was placing annoying phone calls and

that he had done nothing that had anything to do with the interpretation of the collective bargaining agreement.

The Plaintiff Rogers denies any involvement with the Defendant Whitney and that he made any harassing phone calls to her. (See Affidavit of the Defendant James A. Rogers, marked C annexed hereto and made a part hereof.)

The plaintiff never asked his union or the arbitrator to interpret the collective bargaining agreement. He asked that the arbitrator correct a mistake, his wrongful termination. The arbitrator did not give a reason for ruling in favor of NSTAR, but is obvious that the arbitrator could do nothing because no interpretation of the contract was applicable.

The alleged activity for which the Plaintiff was fired was not as a result of dereliction of his duties under his job discrimination, for insubordination to a supervising authority, it did not even take place on the property or any facility of his employer. It did not take place even during times when he was working. The activity for which he was fired had nothing to do with his employment or his conduct within the terms of the CBA.

Nowhere in either Exhibit A or B can there be found any statement by the Defendant NSTAR giving a reason for firing the Plaintiff that was related to his employment. The arbitrator is called upon to arbitrate issues relating to an organized labor dispute. This was not a labor dispute. The arbitrator had little choice but to find for the employer because no issue regarding the CBA existed. The dispute was a personal one between the Plaintiff and the Defendant Whitney.

By inserting itself in that dispute, NSTAR stepped away from the position of an employer governed by a CBA and now was involved in a matter of individual rights. It

acted outrageously by going far beyond what it needed to do to assist in providing information to Whitney or cooperating with police to effect a trace of telephone calls allegedly of a harassing nature coming into its office facility. It had no right to take sides between two employees and certainly took extreme action by firing the Plaintiff to afford the Defendant an immediate remedy to which she was not entitled.

On the basis of the aforesaid argument all counts in the Plaintiff's complaint should stand and the Plaintiff should be allowed to go through discovery. Through discovery the Plaintiff will be able to establish that he did nothing to the Defendant Whitney and that both Defendants went far beyond any standard of decency to do serious harm to the Plaintiff, realizing that their chances, by following accepted remedies at law based upon civil liability standards, would prove unsuccessful. Therefore they created their own remedy, thereby circumventing civil law to effect a wrongful termination, and now appear before the Federal Court in what can only be characterized as a bad faith attempt to have a civil court, sanctify their fraud and deceit.

## CONCLUSION

For the above-stated reasons, Plaintiff asks this Court to deny the Defendants' Motion to Dismiss and remand this matter to the Plymouth Superior Court of the Commonwealth of Massachusetts where it originated and belongs.

RESPECTFULLY SUBMITTED,
James Rogers,
The Plaintiff,
By His Attorney

*/s/ Joseph R. Gallitano*
Joseph R. Gallitano
Gallitano & Associates
34 Main Street Ext. Suite 202
Plymouth, MA  02360
(508) 746-1500
BBO # 183700

Dated:  July 19, 2004

## CERTIFICATE OF SERVICE

I, Joseph R. Gallitano, Esq., hereby certify that I have served a copy of the Plaintiff James A. Roger's Memorandum in Opposition to Defendants' Motion to Dismiss upon all counsel of record this 19th day of July, 2004.

*/s/ Joseph R. Gallitano*
Joseph R. Gallitano