SCANNED
DATE: 07/27/04
BY: SKY

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*************************************
JAMES A. ROGERS, *
*
Plaintiff, *
*
v. * Civil Action No. 04-11190-RCL
*
NSTAR ELECTRIC and *
KIMBERLY WHITNEY, *
*
Defendants *
*************************************

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

In his "Memorandum in Opposition to Defendants' Motion to Dismiss" ("Pl. Opp. Mem."), Plaintiff James Rogers ("Plaintiff") makes several insubstantial arguments, none of which are sufficient to forestall the dismissal of his Complaint:

A. **Plaintiff's Claims Are Preempted**.

Initially, Plaintiff appears to contend (Pl. Opp. Mem. at 5-8) that Counts I, VII and IX of his Verified Complaint[1] all state actionable claims, and are not preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 ("Section 301"). Plaintiff's position is groundless. Plaintiff relies heavily (at 5) on Balsavich v. Local Union 170 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 371 Mass. 283 (1976), but neglects to cite critical language from that opinion which requires the dismissal of all counts of his Complaint.

---

[1]Count I is labeled "wrongful termination and breach of the implied covenant of good faith and fair dealing." Count VII alleges "negligent breach of contract duty," while Count IX is styled as a claim for "breach of employment contract."

In reversing a judgment denying a motion to amend a complaint, the court in Balsavich held that employees covered by a collective bargaining agreement "must initiate the grievance procedures as the contract provides and *it is only when the union fails in its duty to represent them fairly in pressing the grievance, or the employer repudiates or otherwise nullifies the grievance machinery, or the union and the employer contrive together to subvert it, that the employees are free to try judicial remedies*." Balsavich, 371 Mass. at 286 (emphasis added). Plaintiff has not alleged that any of the conditions which would allow him "to try judicial remedies" independent of the collective bargaining agreement have occurred. Accordingly, his Complaint must be dismissed in its entirety.

Plaintiff further discusses case law (at 6-7) on whether Section 301 preempts claims under anti-discrimination statutes. Such discussion is wholly irrelevant. Plaintiff has not alleged that he was discriminated against in violation of M.G.L. c. 151B, or in violation of any other state or federal anti-discrimination statute.

In addition, Plaintiff contends that "[t]he breach of contract by NSTAR was the act of terminating [him] for something not covered by the [collective bargaining agreement, or CBA] and [for] activities that were totally unrelated or governed by the CBA." Plaintiff's position is spurious. NSTAR, of course, contends (and the Arbitrator found) that Plaintiff's termination was consistent with the applicable agreement. Plaintiff's position is to the contrary. In order to resolve this dispute, it will be necessary to interpret the agreement's provision on termination. (See Article V, Management Rights ("If the Local claims that the Company has exercised its right to...discharge employees in an unjust or unreasonable manner, such claim shall be subject to the Grievance Procedure...") (Exhibit A to Memorandum in Support of Defendants' Motion to Dismiss)). For the

reasons discussed in Defendants' underlying memorandum, this provision cannot be divorced from the claims asserted by Plaintiff, and preemption is therefore appropriate. See Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997), cert. denied, 523 U.S. 1123 (1998) (setting forth governing standards). Plaintiff's further insistence (Pl. Opp. Mem. at 8) "that he is asking for fairness," and that his complaint "is essentially in equity," does not alter the fact that the agreement must be interpreted in order to assess the propriety of his termination, and thus the legitimacy of his claims.

Other arguments advanced by Plaintiff are likewise meritless. His insistence that the alleged misconduct of Defendant Whitney "has [nothing] to do with the collective bargaining agreement or with his employment with the company," (Pl. Opp. Mem. at 8), overlooks the allegations in his own Complaint. In Count III Plaintiff alleged (at par. 25) that Ms. Whitney "interfer[ed] with [his] contractual relationship with NSTAR..." In Count IV, Plaintiff alleged that Ms. Whitney "interfer[ed] with [his] advantageous business relationship with NSTAR." (Complaint, par. 27). Ms. Whitney, then, stands accused of wrongfully bringing about Plaintiff's termination from employment with NSTAR. The case law cited by Defendants, and not addressed by Plaintiff (see Memorandum in Support of Defendants' Motion to Dismiss, at 8 ) makes plain that a collective bargaining agreement must be interpreted in order to determine whether an employee improperly induced an alleged wrongful termination.

Plaintiff's further arguments, on the alleged unfairness of his termination from NSTAR's employment, are irrelevant to whether his claims are preempted. Plaintiff's labor union proceeded to arbitration over his termination from NSTAR's employment. The arbitrator's decision could have been challenged in court, but that course was not taken. Defendants' motion accepts as

true Plaintiff's allegations about the impropriety of his termination from employment. All that is at issue is the legal sufficiency of Plaintiff's Complaint.[2]

**B. Several Of Plaintiff's Claims Are Legally Insufficient.**

In addition to arguing that the Complaint was preempted, Defendants noted the legal insufficiency of several of Plaintiff's causes of action. In his opposition, Plaintiff ignores most of these arguments, but does address (at 9) his claim of intentional infliction of emotional distress (which, as argued in the Motion to Dismiss, could only be asserted against Ms. Whitney, consistent with the Workers' Compensation Act).

Plaintiff's arguments on this count are baseless. Plaintiff acknowledged in his Complaint that the tap placed on Ms. Whitney's telephone revealed that he had placed an offensive call to her. (See Complaint, par. 11). The identification of Plaintiff easily removes the conduct of Ms. Whitney from the realm of "extreme and outrageous" behavior needed to state an actionable claim.

**C. Conclusion**

For all the above reasons, and the reasons set forth in the underlying Motion to Dismiss, the Motion to Dismiss should be granted, and the Complaint dismissed with prejudice.

---

[2]For this reason, the transcripts and affidavit submitted by Plaintiff in opposition to the Motion to Dismiss should be disregarded.

Respectfully submitted,

NSTAR ELECTRIC and KIMBERLY WHITNEY,

By their Attorneys,

MORGAN, BROWN & JOY, LLP
One Boston Place
Boston, MA 02108
(617) 523-6666

By:______________________
Keith H. McCown
B.B.O. #329980
Robert P. Morris
B.B.O. #546052

Dated: July 26, 2004

**CERTIFICATE OF SERVICE**

I, Robert P. Morris, certify that on July 26, 2004, I caused to be served a copy of the within pleading by first class mail on counsel for the Plaintiff, Joseph R. Gallitano, Gallitano & Associates, 34 Main Street Extension, Suite 202, Plymouth, MA 02360.

______________________
Robert P. Morris