UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*************************************
JAMES A. ROGERS,                    *
                                    *
            Plaintiff,              *
                                    *
v.                                  *      Civil Action No. 04-11190-RCL
                                    *
NSTAR ELECTRIC AND GAS              *
CORPORATION and KIMBERLY            *
WHITNEY,                            *
                                    *
            Defendants              *
*************************************
```

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT KIMBERLY WHITNEY

Summary judgment is normally sought at the end of discovery. However, this matter calls for a different sequence. Following this Court's ruling on Defendants' Motion to Dismiss, only two (2) counts remain, against Defendant Kimberly Whitney ("Ms. Whitney"). Even at this early stage of the litigation, it is apparent that Plaintiff James A. Rogers ("Mr. Rogers") cannot create a triable issue of material fact on either of his remaining claims. Discovery would be wasteful and unnecessary. Due to the glaring deficiencies in Mr. Rogers's remaining claims that no amount of discovery can cure, summary judgment is appropriately entered for Ms. Whitney.

**A**.   **Background**

NSTAR and Ms. Whitney moved to dismiss all ten (10) counts of Mr. Rogers's Complaint for failure to state a claim upon which relief can be granted. This Court dismissed eight (8) of the ten (10) counts, leaving two (2) counts remaining against Ms. Whitney. The background section of this memorandum is drawn from this Court's opinion on Defendants' Motion to Dismiss, as well as the Statement of Undisputed Material Facts in Support of Ms. Whitney's Motion for

Summary Judgment ("Defendant's Statement").  See Rogers v. NSTAR Electric, 389 F.Supp.2d 100 (D. Mass. 2005).[1]

Mr. Rogers commenced working for NSTAR on April 28, 1986.  In August and December 2000, and then again in February 2001, Ms. Whitney received a series of harassing telephone calls from an unidentified caller on her office phone in Wareham, Massachusetts.  After the call in February 2001, Ms. Whitney complained to the Wareham Police Department.  The police, with the aid of the telephone carrier, Verizon, placed a tap on Ms. Whitney's work phone.  Ms. Whitney received another phone call from the caller on March 30, 2001.  As soon as Ms. Whitney recognized the caller, she activated the phone tap and notified NSTAR security personnel, who contacted the Wareham Police.  The police traced the telephone call to Mr. Rogers's phone.  (See Defendant's Statement, pars. 4-8; Rogers v. NSTAR Electric, 389 F.Supp.2d at 104).

NSTAR terminated Mr. Rogers's employment on May 18, 2001, based on Ms. Whitney's complaint.  At the time of his termination, Mr. Rogers was employed pursuant to a collective bargaining agreement (the "CBA") between NSTAR and the Utility Workers Union of America, AFL-CIO, and Local 369, Utility Workers Union of America, AFL-CIO.  After his termination, Mr. Rogers exhausted the administrative remedies under the CBA "without result" (as alleged by the Complaint), i.e., an Arbitrator upheld his termination from NSTAR's employment. (See Defendant's Statement, pars. 4, 11-12; Rogers v. NSTAR Electric, 389 F.Supp.2d at 104-105).

About a week before Mr. Rogers's termination, Ms. Whitney testified at a Show Cause Hearing at the Wareham District Court, conducted by an Assistant Clerk-Magistrate, on a charge of annoying phone calls and criminal harassment brought by the Wareham Police Department

---

[1] All facts in Defendant's Statement are assumed to be true for purposes of this motion only.

against Mr. Rogers. The complaint was dismissed. (See Defendant's Statement, pars. 9, 10; Rogers v. NSTAR Electric, 389 F.Supp.2d at 104-105).

Mr. Rogers and Ms. Whitney did not know each other before Mr. Rogers was identified as placing the call to her in March 2001. The only contact which either of them could recall was on or about July 31, 2000, when Ms. Whitney made a presentation to a group of employees about NSTAR's policy of zero tolerance toward workplace violence and harassment, and a new Code of Conduct. (See Defendant's Statement, pars. 15, 16; Rogers v. NSTAR Electric, 309 F.Supp.2d at 104 n.2).

As a result of this Court's ruling on the motion to dismiss, two counts remain, against Ms. Whitney alone: Count IV, alleging intentional interference with an advantageous business relationship, and Count X, slander and libel. Following a scheduling conference in November 2005, the parties exchanged mandatory disclosures; no further discovery has been conducted.

**B.    Argument:    Summary Judgment Is Appropriately Entered For Ms. Whitney On The Remaining Counts Of Plaintiff's Complaint.**

One of the two (2) remaining counts of Mr. Rogers's Complaint requires proof of malicious or other inappropriate conduct that he will be unable to prove; the other count is absolutely barred by a well-established privilege. Further discovery will not aid Plaintiff in marshalling the requisite proof or in overcoming the applicable privilege. Accordingly, summary judgment is properly entered at this time.

**1.    Mr. Rogers Cannot Present Evidence On A Necessary Element Of His Claim For Interference With Advantageous Business Relations.**

In order to establish a claim of interference with advantageous business relations, alleged in Count IV of the Complaint, Mr. Rogers must prove: (1) he "had an advantageous

employment relationship with [his] employer; (2) the defendant knowingly induced the employer to breach that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant's actions." Weber v. Community Teamwork, Inc., 434 Mass. 761, 781, 752 N.E.2d 700 (2001). When this claim is asserted "against an individual official of the employer, the plaintiff is required to show, as to 'improper motive or means,' that the 'controlling factor' in the alleged interference was 'actual' malice; 'implied' malice is not sufficient." Weber, 435 Mass. at 781. "[T]he requisite 'malice' in this context" is defined as "'a spiteful, malignant purpose, unrelated to the legitimate corporate interest' of the employer." Weber, 434 Mass. at 782, quoting Boothby v. Texon, Inc., 414 Mass. 468, 487, 608 N.E.2d 1028 (1993). "In the employment and discharge context, the law of this jurisdiction seeks to protect a corporate official's freedom of action by requiring proof that the official acted with actual malice." Alba v. Sampson, 44 Mass. App. Ct. 311, 314, 690 N.E.2d 1240, rev. denied, 427 Mass. 1104, 695 N.E.2d 667 (1998). "Although summary judgment is often an improper medium to resolve state of mind issues, it is appropriate in tortious interference claims if the record contains insufficient facts tending to show actual malice." Alba v. Sampson, 44 Mass. App. Ct. at 314.

Despite the early stage of discovery in this action, the Complaint, arbitration transcript, and recently produced "Show Cause" hearing transcript on a criminal complaint filed by the Wareham Police, have established that Mr. Rogers cannot create a triable issue of material fact on whether Ms. Whitney acted with malice toward him. The record on this matter is clear: Outside of a group training session led by Ms. Whitney, and attended by Mr. Rogers, Ms. Whitney and Mr. Rogers didn't work together, and didn't even know each other until Mr. Rogers was identified as the

one making the harassing phone calls.  Mr. Rogers's Complaint, as well as the transcripts of the arbitration and "Show Cause" hearings, all agree on this point.  (See Defendant's Statement, pars. 14-16).

Under these circumstances, no reasonable factfinder could conclude that Ms. Whitney acted out of "a spiteful, malignant purpose, unrelated to the legitimate corporate interest," see Boothby v. Texon, Inc., 414 Mass. at 487, when she reported the series of harassing calls from an unknown caller to NSTAR and the Wareham Police; which led to a trace being placed on her phone; which led to the identification -- by Verizon-- of an individual that Ms. Whitney didn't even know (Mr. Rogers) as the caller; which led to Mr. Rogers's termination.  Given that Ms. Whitney didn't know who was making the calls, that Verizon identified Mr. Rogers as the caller, and that Mr. Rogers and Ms. Whitney didn't even know each other, Ms. Whitney could not have acted with the requisite illicit motive toward Mr. Rogers by reporting the calls and linking them together.  Even if, as Mr. Rogers is likely to assert, there were insufficient grounds for linking the calls together, that does not create a triable issue of material fact on whether Ms. Whitney was out to get an employee that she didn't even know.

Since no amount of discovery will compensate for the absence of proof on this critical element of Mr. Rogers's claim, summary judgment is appropriately entered for Ms. Whitney on this count.

**2**.     **Plaintiff's Defamation Claim Is Based On Statements That Are Absolutely Privileged**.

In Count X of his Complaint, Mr. Rogers alleged that both NSTAR[2] and Ms. Whitney "did knowingly state and publish false statements accusing the Plaintiff of committing a criminal

---

[2]As a result of the Court's ruling on Defendants' Motion to Dismiss, NSTAR is no longer a party

act..." Paragraph 14 of the Complaint alleges the occasion on which the alleged "false statements" were published:

> On May 11, 2001 the defendant Whitney assisted by counsel for the defendant NSTAR, attended a hearing before the Clerk Magistrate of the Wareham District court, based upon accusations made by the defendant, Whitney, against Rogers for annoying phone calls and criminal harassment.

Ms. Whitney's allegations against Mr. Rogers cannot form the basis of a defamation claim because such allegations were made in support of a criminal complaint brought by the Wareham Police Department against Mr. Rogers.  "Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith." Correllas v. Viveiros, 410 Mass. 314, 319, 572 N.E.2d 7 (1991).  In particular, an application "to a District Court Clerk for the issuance of a criminal complaint… involves a form of judicial proceeding," such "that statements made therein are absolutely privileged." Correllas v. Viveiros, 410 Mass. at 321-322, citing Kipp v. Kueker, 7 Mass. App. Ct. 206, 211-212, 386 N.E.2d 1282 (1979). Accord, Roselle v. Melrose Police Officer Crowley, 2005 WL 1155139 at *5 (Super. Ct. 2005) (police officer's "statements made in his application for the criminal complaint against [Plaintiff] are absolutely privileged.").

Ms. Whitney's allegedly defamatory statements about Mr. Rogers occurred during the "Show Cause Hearing" in the Wareham District Court on May 11, 2001, based on a criminal complaint brought by the Wareham Police Department.  (See Complaint, par. 14; Defendant's Statement, par. 9).  The allegedly false statements attributed to Ms. Whitney are absolutely

---

to this action.

privileged and summary judgment is properly entered for Ms. Whitney on this claim.

**C.**     **Conclusion**

For all the above reasons, Ms. Whitney's motion should be allowed and the remaining counts of the Complaint (Count IV and X) should be dismissed, with prejudice.

                                    Respectfully submitted,

                                    KIMBERLY WHITNEY,

                                    By her Attorneys,

                                    MORGAN, BROWN & JOY, LLP
                                    200 State Street, 11th Floor
                                    Boston, MA 02109-2605
                                    (617) 523-6666

                                    By: /s/Robert P. Morris
                                          Keith H. McCown
                                          B.B.O. #329980
                                          Robert P. Morris
                                          B.B.O. #546052

Dated: January 10, 2006

**CERTIFICATE OF SERVICE**

I, Robert P. Morris, hereby certify that on January 10, 2006, this document filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

                                    /s/Robert P. Morris
                                      Robert P. Morris