in the Wareham office and in the morning, first thing in the morning, and I was checking messages from my other office and e-mails. Upon checking telephone messages, there was a message from Kim Whitney regarding an obscene phone call she had received on February 1. The call was made to me on February 1, and I picked up on the message February 2. And it was Kim advising that she had gotten an obscene phone call. I was also in the process of checking e-mails, and I had received a copy of an e-mail that Kim had sent to my manager and a copy to myself regarding the call she had received on February 1.

I know that Kim has an office in Wareham. I went down to see her. At that point Kim briefed me about the previous calls. The previous calls had been handled between Kim and my manager. So that's where I got in on February 2. My manager was out of town, and security matters were being related to me. So in conversation with Kim on the 2nd, she gave me background about the previous calls that she had received, told me that a private line had been installed and that she had been told she could do call trace. After meeting with Kim, I called our voice operations people to find out what to do about

FORM CSR - LASER REPORTERS PAPER & MFG CO. 800-626-6313

getting the call trace activated. They got back to me later in the day, e-mailed me the instructions, which I then forwarded to Kim. Met with her again to go over the instructions as to what to do on the call trace.

Kim also advised that she had been so upset by the call that she had stopped by the Wareham Police Department on her way home from work, which would have been that February 1, and advised me that she filed a report and it was to be assigned to one of the detectives at Wareham.

Later in the week on February 8 received information from Kim that she had, in fact, met with Detective Cabral at the Wareham Police Department. She gave this information to both myself and my security manager. On February 9 I went down -- I contacted Detective Cabral and went down and met with him and introduced myself, left a business card, and told him that I was with NSTAR security, you know, to coordinate the case.

The next involvement was March 30. I was again -- at this point I was in my Wareham office. It was approximately 4:10 in the afternoon. I was just sitting at my desk doing some work. Kim entered my

FORM LASER · REPORTERS PAPER & MFG. CO. 800-626-6313

office. She was physically shaking, and she just came in abruptly and said, "I just got another one of those calls." And she was physically shaking. I asked her if she had remembered to do the -- activate the call trace, which she said that she did.

At that point I placed a call to Detective Cabral, left a voice message for him just advising him that another call had come in, and I tried to call Verizon on that. I believe that was a Friday. On Monday, April 2, I received a message from Detective Cabral, and he requested that I contact Verizon to get a case number and for the call verification and get a case number. I did that, and I gave that information to Detective Cabral. Later on that same day I again heard from Detective Cabral. He advised that -- Verizon had told me that the information would be given directly to the police department, so on April 2 I gave that information to Detective Cabral. Later on that same day Detective Cabral contacted me, and he told me that the call trace had been successful and he had the information as far as a name, address, and telephone number. He provided me with that information. The name was James --

MR. DELANO: I'm going to object at this point. We're now into evidence produced I guess by Verizon, Mr. Clerk, as opposed to any of the witnesses to this incident. No one's here from Verizon.

DETECTIVE CABRAL: Here's an affidavit from Verizon.

(Detective Cabral hands to the assistant clerk-magistrate.)

ASSISTANT CLERK-MAGISTRATE: (To Mr. Delano) Did you see this? Is that part of the report?

MR. DELANO: (To Detective Cabral) Did you send me that stuff?

DETECTIVE CABRAL: I should have, yeah. That's just from the phone company.

MR. DELANO: Oh, okay, I did see that.

DETECTIVE CABRAL: That's the affidavit.

ASSISTANT CLERK-MAGISTRATE: Yeah, I'm going to let -- I mean, I'll let...

MR. DELANO: Thank you.

ASSISTANT CLERK-MAGISTRATE: Go ahead. I'm sorry.

You find out that the call comes back and is traced.

MS. MURPHY: Detective Cabral gave me the

FORM CSR LASER REPORTERS PAPER & MFG. CO. 800-626-6313

information and asked if I knew the individual. I did not. I had an employee listing, and I checked the employee listing, and we did have James Rogers at that same address with that same telephone number.

I then called Kim to ask her if she knew the individual. She stated she didn't know him but the name sounded familiar, and she was going to check some records. She gave me -- she said, "Well, we have James Rogers at this name and this address," and that, again, was confirmed. I then called Detective Cabral back and advised him that we did have an employee James Rogers listed to that address and that was the telephone number on our employee listing.

ASSISTANT CLERK-MAGISTRATE: Now, this is the only call -- this is the only call that was traced out of the several calls that were made?

MS. MURPHY: That's correct.

ASSISTANT CLERK-MAGISTRATE: Ms. Whitney works out of what office?

MS. MURPHY: I think just Wareham.

ASSISTANT CLERK-MAGISTRATE: You're in the Wareham, Ms. Whitney?

MS. WHITNEY: Yes.

ASSISTANT CLERK-MAGISTRATE: And do you know

what Mr. Rogers' function was? I mean, was he a lineman, or was he out on the road?

MS. MURPHY: At that time when I received the information, I did not -- when I was asked if I knew him, I had to check an employee listing. I didn't know at that time.

ASSISTANT CLERK-MAGISTRATE: So when these phone calls -- I'm just trying to think. These phone calls come in. Ms. Whitney's in the Wareham office. These phone calls come in to her. You don't know whether the phone calls -- can you tell whether they're coming from inside the company or coming from an outside line? Can you differentiate that? You know what I'm saying? Maybe I'm not being clear.

MS. MURPHY: Again --

ASSISTANT CLERK-MAGISTRATE: Can you tell that? I mean, can you tell where they're coming from? I mean, from inside as opposed to an outside?

MS. MURPHY: It depends on how the call is dialed. There's a means of dialing internally, but the system that's set up in the Wareham office I could actually dial -- go to an outside line and dial and make it come in as an outside call.

ASSISTANT CLERK-MAGISTRATE: I'm just trying to

FORM CSR LASER REPORTERS PAPER & MFG. CO. 800-626-6313

be clear.

How many employees are over here in Wareham, do you know? Would you know offhand?

MS. MURPHY: I don't.

ASSISTANT CLERK-MAGISTRATE: Would it be fair to say several hundred or less than that?

MS. MURPHY: No, it's a facility that's being closed, and we've been moving people out.

ASSISTANT CLERK-MAGISTRATE: (To Mr. Delano) I'm sorry. You want to ask any questions?

MR. DELANO: No, I don't think I do. Thank you.

ASSISTANT CLERK-MAGISTRATE: Your ball game. I don't know what you want to do. Do you want to put on a case?

MR. DELANO: No, I'm not going to.

ASSISTANT CLERK-MAGISTRATE: Do you want to argue?

MR. DELANO: Yes. Essentially, Mr. Clerk, I'd suggest the following. Although it sounds like it's an unfortunate circumstance for Ms. Whitney, I'd suggest to the Court that there's insufficient evidence here at least to issue complaints against Mr. Rogers based on the testimony that was forthcoming. Essentially Ms. Whitney sat here before

FORM CSR LASER REPORTERS PAPER & MFG. CO. 800-626-6313

you and told you today she couldn't recognize who the person was that was calling. She can't recognize the voice. Whatever was said was -- strike that. Whatever was -- it's not even said because nothing was said. Apparently there was allegedly some breathing, which I'd suggest she could not identify or tag to Mr. Rogers in any event.

We have one call that was allegedly verified. I think we have a phone system according to Ms. Whitney's testimony, if I don't misspeak, a truncated phone system which sounded like their own company was having trouble with their own phone lines. She set up a digital access box to try to catch whoever was calling and was unsuccessful. She testified to that. She indicated that -- although the inference I guess maybe we're looking at is if he works for the company the call could have come from inside or outside, she just suggested that perhaps -- and I'm not quite clear on that -- she could go outside and make a call look like it came from the inside. I think that's what she said. And it seems to me that maybe this phone system down here with NSTAR is less than perfect.

Mr. Rogers works at NSTAR. Detective Cabral

FORM CSR LASER REPORTERS PAPER & MFG. CO. 800-626-6313

testified to --

ASSISTANT CLERK-MAGISTRATE: Are you still with the company?

MR. DELANO: They've terminated him basically without due process.

MR. DONAHUE: He has not been terminated.

MR. DELANO: He'll be terminated next Friday.

MR. DONAHUE: He has not been terminated.

MR. DELANO: He's suspended without pay.

ASSISTANT CLERK-MAGISTRATE: As a result of this incident?

MR. DELANO: Yes, suspended without pay as a result of this incident, and I am told by NSTAR's attorney yesterday --

MR. DONAHUE: Objection.

ASSISTANT CLERK-MAGISTRATE: (To Mr. Donahue) Are you the attorney for the company, or are you a personal attorney?

MR. DONAHUE: No, Ms. Whitney.

MR. DELANO: But he will be terminated next Friday.

Detective Cabral spoke with Mr. Rogers. Mr. Rogers' girlfriend works at the Wareham office. It is possible that he, I guess, called on that day. I

LASER REPORTERS PAPER & MFG. CO. 800-626-6313

understand that he said at the hearing that he was not even home on that day at that particular time, but in any event, what we have here is one call that's been verified. And I'd suggest, Mr. Clerk, assumption and guesswork on the other four calls, which, by the way, are broken up in time frames. We've got one call in August and then nothing for four months and then this call. And she testifies that although she gets a call in August, you know, she takes a note down at that point in time, but she doesn't get a call again for four months. She gets one call, and she takes a note down and records that call coming in on that one particular day and then doesn't get another call for another four months.

The calls, again, not to belabor the point, but at best they are whispers. At best I'd suggest, Mr. Clerk, if it were to go beyond this point, certainly would not I don't think go any further in the criminal court by way of a trial matter because I don't believe Ms. Whitney could identify the person.

ASSISTANT CLERK-MAGISTRATE: Could I ask you, what is Mr. Rogers' function? What does he do?

MR. DELANO: He's a lineman.

ASSISTANT CLERK-MAGISTRATE: So he's out on the

FORM LSR LASER REPORTERS PAPER & MFG.CO. 800-626-6313

road basically?

MR. DELANO: He's out on the road. The other instances we have are December 5 or 6 date. She's not sure which, you know -- which date that is, and I'd suggest to you it's kind of crucial, although she has specific memory she says of August 30, January 2, February 1, if that's what they are. She doesn't have a specific memory of the December 5 or 6 date, and again, although she says these calls were thirty seconds to forty-five seconds long, nothing was said during the calls. There was breathing, and perhaps it was a wrong number.

I'd suggest at least, Mr. Clerk, that there's not enough here to issue on using the standard that the Court's going to use, the PC standard; that it's an unfortunate circumstance for Ms. Whitney, but clearly there's not enough here to identify Mr. Rogers as the perpetrator. I'd ask that you not issue the complaints.

ASSISTANT CLERK-MAGISTRATE: (To Mr. Cabral) Do you want to argue?

DETECTIVE CABRAL: Yes. Like I said, when Ms. Whitney came to me in February, she was very upset. It affected her home life. And I asked her that

FORM CSR - LASER REPORTERS PAPER & MFG. CO. 800-626-6313

question. I said, "How do you know it's the same person?" and she said, "This is the same person." No doubt in her mind.

MR. DELANO: Well, I'm going to, Mr. Clerk, at least to the extent that --

ASSISTANT CLERK-MAGISTRATE: I mean, it's argument.

MR. DELANO: Thank you.

DETECTIVE CABRAL: This is the same person that called her several times before. It affected her home life, and she -- when I asked her about the masturbating, how she knew on the phone about masturbating, she said she's over forty years old, she knows what masturbating is, and there's no doubt in her mind that this person was masturbating on the phone while talking to her.

These calls would not be able to be traced because -- we have that problem with all companies that if they go through a switchboard, you can't trace those phones. It goes through what they call a trunk line. Verizon explained that to NSTAR. The only way they could trace these phones was by putting a direct line, which they did on the fourth call. This call was traced to Mr. Rogers' house, and she's

100 percent sure it was the same person that called her four or five times before, and that's why this charge was issued.

ASSISTANT CLERK-MAGISTRATE: (To Mr. Donahue) Did you want to say anything? I'm sorry. This is a little unusual.

MR. DONAHUE: You've heard her story. I would just call the Court's attention that this gentleman presented evidence at the hearing at the -- of his employer, and at that hearing he testified that he was not on the premises when that call was made; it was traced, and he was at another location. He had someone to verify that and was given an opportunity to present that person to verify that he was at some other location, and that person never showed up. So that's the story. The calls came from where they came from.

MR. DELANO: I'm going to object to that to the extent that I don't know what it means.

MR. DONAHUE: You know what it means.

MR. DELANO: I'm going to object to that too.

ASSISTANT CLERK-MAGISTRATE: All right.

MR. DELANO: Thanks for telling me.

ASSISTANT CLERK-MAGISTRATE: I'll be honest with

FORM CSR LASER REPORTERS PAPER & MFG CO 800-626-6313

you. I've got to think about this. I've got to look at the relevant statutes. We have one call that was traced. I think in both of these charges it describes a pattern which was suggested has got to be more than once.

MR. DELANO: I know on the annoying, Mr. Clerk, it is three or more under the annoying phone calls.

ASSISTANT CLERK-MAGISTRATE: Right, and I've got to be able to tie -- I've got to be able to tie the other ones in. And I don't know. I really -- I'm having some problems, to be honest with you. I've got to read up on this harassment statute and go over the annoying statute again because it's been a while since I looked at it.

MR. DELANO: August 1, 2000, that was passed.

ASSISTANT CLERK-MAGISTRATE: This one here (indicates)?

MR. DELANO: Yes.

ASSISTANT CLERK-MAGISTRATE: I'm aware of that. I've just got to go over it a little bit more. I'm going to let you know by mail. I'm going to notify you, okay. I'm not sure what I'm going to do at this point. I'll take it under advisement.

MR. DELANO: Thank you, Mr. Clerk. Thank you

FORM CSR LASER REPORTERS PAPER & MFG CO. 800 626 6313

for allowing the stenographer as well.

ASSISTANT CLERK-MAGISTRATE: What I'll do is I'll notify Detective Cabral 'cause he is the complainant, and he can notify the other parties. I'll notify Mr. Delano, okay.

MR. DELANO: Thank you.

(Whereupon, at 9:49 a.m. the proceedings were concluded.)

REPORTER'S CERTIFICATE

PLYMOUTH, SS

I, Linda M. Corcoran, a Court Reporter and Notary Public, in and for the Commonwealth of Massachusetts, do hereby certify that:

The foregoing 44 pages comprises a full, true, and accurate record to the best of my knowledge, skill, and ability of the testimony taken before Assistant Clerk-Magistrate David M. Nobrega at the Wareham District Court, Wareham, Massachusetts, on Friday, May 11, 2001, commencing at 9:01 a.m.

I further certify that I am a disinterested person to the action in which this deposition is taken.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal this 31st day of May, 2001.

Linda M. Corcoran - Court Reporter
My commission expires:
October 6, 2006