UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*************************************
JAMES A. ROGERS,                     *
                                     *
            Plaintiff,               *
                                     *
v.                                   *   Civil Action No. 04-11190-RCL
                                     *
NSTAR ELECTRIC AND GAS               *
CORPORATION and KIMBERLY             *
WHITNEY,                             *
                                     *
            Defendants               *
*************************************

**MEMORANDUM OF DEFENDANT KIMBERLY WHITNEY
IN OPPOSITION TO MOTION TO RESERVE RULING ON
AND CONTINUE SUMMARY JUDGMENT UNDER RULE 56(F)**

In his combined memorandum responding to Defendant Kimberly Whitney's ("Ms. Whitney") motion for summary judgment, and supporting his motion to conduct discovery pursuant to Fed. R. Civ. P. 56(f) before submitting a substantive opposition, Plaintiff James Rogers ("Mr. Rogers") does not take issue with any of the positions advanced in Ms. Whitney's motion. Instead, by way of opposition, Mr. Rogers relies solely on his motion to conduct discovery. In doing so, he has fallen far short of the standards under Rule 56(f), which require that a party such as Mr. Rogers identify specific facts that would enable him to create a triable issue of material fact on his claims. Accordingly, his motion under Rule 56(f) should be denied, and summary judgment entered in Ms. Whitney's favor.

**A.    The Discovery Sought By Mr. Rogers Will Not Create A Triable Issue Of Material
        Fact On His Remaining Claims**.

In his Rule 56(f) motion, and related pleadings (Rule 56(f) Affidavit of Counsel; Affidavit of Rogers; Memorandum in Opposition to Whitney's Motion for Summary Judgment,

and in Support of Rule 56(f) Motion), Mr. Rogers claims that he needs to depose his girlfriend (Betty Clark) and Ms. Whitney, and to conduct unspecified written discovery, before responding to the summary judgment motion.[1]  Mr. Rogers's motion and related pleadings fail to offer any legitimate basis for not granting summary judgment at this time.

In order to conduct discovery pursuant to Rule 56(f),[2] a party must make several showings, including an "indicat[ion] of how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."  Resolution Trust Corp. v. North Bridge Associates, Inc., 22 F.3d 1198, 1203 (1st Cir. 1994).  Accord, Veliz v. Awning Windows, Inc., 375 F.3d 35, 40 (1st Cir. 2004) (same); Price v. General Motors Corp., 931 F.3d 162, 164 (1st Cir. 1991) ("The movant must (1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue…").  "A court may grant summary judgment despite an opposing party's claim that discovery would yield additional facts where the opposing party has not alleged specific facts that could be developed through such discovery."

---

[1] Mr. Rogers seeks relief under Rule 56(f) after assenting to Ms. Whitney's Motion for Protective Order, which asked this Court to stay discovery -- including depositions of Ms. Clark and Ms. Whitney noticed by Mr. Rogers -- pending resolution of the summary judgment motion.  For Mr. Rogers, resolution of the summary judgment motion appears to mean nothing more than conducting the discovery that he agreed to stay.

[2] Fed R. Civ. P. 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

While Mr. Rogers's memorandum of law (at 7-10) cites to Mass. R. Civ. P. 56(f), the Federal Rules of Civil Procedure, and not the Massachusetts Rules, govern this action.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 426 n.7 (1996) citing Hanna v. Plumer, 380 U.S. 460, 469, 474 (1965), and Burlington Northern Railroad Co v. Woods, 480 U.S. 1, 4-5 (1987).

Taylor v. Gallagher, 737 F.2d 134, 137 (1st Cir. 1984).  It is up to the moving party to "show through a Rule 56(f) affidavit or otherwise, how discovery could have breathed life into his claim."  Taylor v. Gallagher, 737 F.2d at 137.  Despite the "salutary purposes underlying Rule 56(f)," the First Circuit has rejected the notion that "Rule 56(f) has no bite…"  Resolution Trust Corp. v. North Bridge Associates, Inc., 22 F.3d at 1203.

The two (2) affidavits and memorandum of law submitted by Mr. Rogers[3] fail to make the requisite showing as to either of his remaining claims:

**1**.     **Intentional Interference With Advantageous Relations**

In her Motion for Summary Judgment, Ms. Whitney argued that no triable issue of material fact existed on Mr. Rogers's claim of intentional interference with advantageous relations.  In particular, Ms. Whitney asserted that Mr. Rogers could not establish that she acted with malice toward him, as required to pursue a claim under this theory.  See Weber v. Community Teamwork, Inc., 434 Mass. 761, 781-782, 752 N.E.2d 700 (2001); Alba v. Sampson, 44 Mass. App. Ct. 311, 314, 690 N.E.2d 1240, rev. denied, 427 Mass. 1104, 695 N.E.2d 663 (1998).  In his pleadings, Mr. Rogers does not take issue with this legal standard, or its application to his claim.

Instead, Mr. Rogers's principal argument on this claim is that he "believes the Defendant is being malicious in causing him to lose his job after the local Clerk Magistrate denied her application for a criminal complaint against the Plaintiff."  (See Memorandum at 5-6).  Mr. Rogers is referring to the criminal complaint brought by the Wareham Police Department

---

[3]In Mr. Rogers's "Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion to Reserve Ruling on Defendant's Motion for Summary Judgment Under Rule 56(f) to Permit Discovery," Mr. Rogers sets forth a "Statement of Facts" at 1-3.  This statement does not cite to any supporting materials, or otherwise comply with Local Rule 56.1.

against him for the harassing phone calls placed to Ms. Whitney.  (See Statement of Undisputed, Material Facts in Support of Motion for Summary Judgment of Defendant Kimberly Whitney ("Statement"), par. 9).  While Mr. Rogers offers nothing beyond the bald assertion quoted above, his apparent theory is that the sequence of events could raise a triable issue of material fact: the criminal hearing was held on May 11, 2001, the notice of denial of the criminal complaint was dated May 14, 2001 (though the only known copy went to Mr. Rogers, such that it is unknown when Ms. Whitney learned of the denial), and Mr. Rogers's termination letter was dated May 18, 2001.  (See Statement, pars. 9, 11; see also Exh. 1 to Supplemental Appendix to Motion for Summary Judgment of Defendant Kimberly Whitney ("Supplemental Appendix"), submitted herewith, May 14, 2001 correspondence giving notice of denial of criminal complaint).  Mr. Rogers seems to suggest that the timing of these events raises an inference that Ms. Whitney brought about his termination in retaliation for the denial of the criminal complaint, such that discovery is warranted.

While there are numerous difficulties with this argument -- not the least of which is its wildly speculative nature -- for present purposes this Court need look no further than the arbitration transcript and exhibits in order to reject Mr. Rogers's claim for discovery.  At the arbitration hearing, conduced before the filing of the present action, James McGuire, Senior Labor Relations Consultant for NSTAR Electric and Gas Corporation ("NSTAR"), testified that he was responsible for terminating Rogers's employment.  Mr. McGuire made his decision at the conclusion of a grievance meeting conducted under the collective bargaining agreement.  Mr. Rogers was present at this meeting as were two union officials and another NSTAR manager besides Mr. McGuire.  The grievance meeting was held on April 23, 2001, over two (2) weeks before the hearing on May 14 on the criminal complaint brought by the Wareham Police.  Mr.

McGuire testified that the April 23rd meeting ended with his concluding that the suspension of Mr. Rogers was "justified and would remain in effect <u>till the close of business on May 18, 2001, at which time Mr. Rogers would be terminated</u>."  (Transcript of Arbitration between NSTAR and Local 369, Utility Workers Union of America ("Arbitration Transcript"), Exh. 3 to Appendix to Motion for Summary Judgment of Defendant Kimberly Whitney, at 145-155, 180) (emphasis added).  On April 25, 2001, Mr. McGuire notified the Union in writing that Rogers's termination would be converted to a termination effective May 18th.  (<u>See</u> Exh. 2 to Supplemental Appendix).  In light of Mr. McGuire's decision on April 23 to terminate Mr. Rogers's employment and his ensuing April 25th correspondence, the hypothesis that Ms. Whitney brought about Mr. Rogers's termination out of malice toward him due to the denial of the criminal complaint on or about May 14 is utterly unfounded, and cannot be used to justify granting Mr. Rogers's motion under Rule 56(f).

        Thus, Mr. Rogers has failed to "articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue" on the issue of Ms. Whitney's "actual malice" toward him.  <u>See</u> <u>Price v. General Motors Corp</u>., 931 F.2d at 164. Apart from the unfounded claim about the criminal complaint, the only other specific theories advanced by Mr. Rogers -- that there was insufficient identification of his making the harassing calls, and that NSTAR's phone system may have been defective (<u>see</u> Rogers's Memorandum at 5) -- are both groundless, and irrelevant to the intentional interference claim.  Both at the arbitration hearing and at the hearing on the criminal complaint Ms. Whitney testified in detail about the similarities in the five (5) calls, and her sincere belief that the same person made these calls -- a conclusion she reached long before she knew the caller's identity.  (<u>See</u> Arbitration Transcript, Exh. 3 to Defendant's Appendix, 25-26, 40-41, 44-46, 50-51, 60-61; Transcript of

Show Cause Hearing ("Show Cause Transcript"), Exh. 5 to Defendant's Appendix, 60-61; see also Exhs. 3 and 4 to Supplemental Appendix, e-mail communications dated before the last call traced to Mr. Rogers, in which Ms. Whitney stated that the same person was making the calls). In addition, the call traced to Mr. Rogers's home phone was made on a private line for Ms. Whitney at her Wareham, Massachusetts office, and not on the "truncated" general phone line to the Wareham office with individual phone extensions. The private line was installed after the harassing calls began, but months before the last call was traced to Mr. Rogers's outside line. (See Exh. 3 to Defendant's Appendix, Arbitration Transcript, 48-49, 60, 85-86, 98, 103, 114; Exh. 5 to Defendant's Appendix, Show Cause Transcript, 11-12).

In addition, the arguments raised by Mr. Rogers are irrelevant to his intentional interference claim. As discussed in Ms. Whitney's underlying memorandum, Ms. Whitney could not have acted out of "a spiteful, malignant purpose, unrelated to the legitimate corporate interest," see Boothby v. Texon, Inc., 414 Mass. 468, 487, 608 N.E.2d 1028 (1993), when she reported a series of harassing calls from an unknown caller to NSTAR and the Wareham Police; which led to a trace being place on her private phone line; which led to the identification -- by Verizon -- of an individual that Ms. Whitney didn't even know (Mr. Rogers) as the caller; which led to Mr. Rogers's termination. Since Ms. Whitney didn't know who was making the calls; Verizon, not Ms. Whitney, identified Mr. Rogers as the caller; and Mr. Rogers and Ms. Whitney didn't even know each other, Ms. Whitney could not have acted with the requisite illicit motive toward Mr. Rogers by reporting the calls and linking them together. Under no conceivable circumstances can it be concluded that "discovery [can] breathe[] life into [Mr. Rogers's] claim." See Taylor v. Gallagher, 737 F.2d at 137. Compare, Commonwealth Aluminum Corp. v. Markowitz, 164 F.R.D. 117, 121 n.6 (D. Mass. 1995), cited by Mr. Rogers, in which the court

6

allowed a Rule 56(f) motion where "Plaintiff's case may be strengthened through discovery."

**2**.     **Defamation**

Ms. Whitney argued in her summary judgment motion that Mr. Rogers's defamation claim, based on statements made during the criminal complaint hearing, was barred by an absolute privilege.  In his opposition pleadings, Mr. Rogers concedes that the alleged statements are privileged.  (See Rogers's Memorandum at 6).  However, he now alleges that there was no "privilege to have the same charges to be used by the Defendant in the Plaintiff's work place to brand him a sex offender and have him discharged."  (See Rogers's Memorandum at 6).

The problems with Mr. Rogers's newly discovered theory are numerous.  First, his Amended Complaint does not allege any defamatory statements of the sort identified in his most recent memorandum.  Accordingly, no such claim is properly before this Court.  The only claim of defamation is based on the statements which Mr. Rogers now concedes are privileged.  Thus, summary judgment is thus appropriately entered for Ms. Whitney on this claim.

Even assuming arguendo that Mr. Rogers's new theory of defamation is properly considered, discovery into such claim would not be warranted.  As noted above, it was not Ms. Whitney who identified Mr. Rogers as the caller, but Verizon, after a trace was placed on Ms. Whitney's telephone line.  Verizon installed the trace after Ms. Whitney, without knowing the caller's identity, linked the first four (4) telephone calls together.  She further linked the fifth call to the first four (4) calls, again without knowing the identity of the caller.  (See discussion supra).  Under these circumstances no amount of discovery will enable Mr. Rogers to create a triable issue of material fact on whether Ms. Whitney defamed him by claiming that the fifth, unknown caller was the same person who placed the first four (4) calls.

In addition, a conditional privilege may "be asserted by an employee who, as in this case, publishes a sexual harassment complaint to her supervisors, employer, or to the employer's EEO office, so long as the complaint is (1) 'of a kind reasonably calculated to protect or further' the employer's interest in maintaining a workplace free of sexual harassment, and (2) the complaint is not made 'recklessly.'" Kibbe v. Potter, 196 F.Supp.2d 48, 53-54 (D.Mass. 2002), quoting Foley v. Polaroid Corp., 400 Mass. 82, 94-95, 508 N.E.2d 72 (1987). Accord, Caouette v. OfficeMax, Inc., 352 F.Supp.2d 134, 143 (D.N.H. 2005) ("A number of courts have recognized a similar privilege that shields employees' reports to management of sexual harassment by their co-workers, given the complaining employees' interest in preventing further abuse and the employer's responsibility under federal law to do the same."); Quiroz v. Hartgrove Hospital, 1999 WL 281343, 75 Empl. Prac. Dec. P 45,833 (N.D. Ill. 1999) ("Private compliance and enforcement procedures are essential to the success of efforts to eliminate employment discrimination, such private enforcement would be undermined if statements made during investigations were not protected by a qualified privilege."); Miller v. Servicemaster by Rees, 174 Ariz. 518, 851 P.2d 143, 145 (Ariz. App. Division 1 1992) ("[A] conditional privilege exists because public policy dictates that employees must be protected from workplace sexual harassment [citing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, and Arizona's analogue to Title VII]. That interest can only be protected if employees can report perceived acts of sexual harassment regardless whether the acts were intended to harass.").

A conditional privilege properly applies to any allegedly defamatory statement against Mr. Rogers that could conceivably be attributed to Ms. Whitney. Ms. Whitney had a legitimate interest in informing NSTAR about the harassing calls, and there is no indication of any sort that she did so recklessly.

**B.    <u>Ms. Whitney Should Not Again Be Subject To Cross-Examination By Mr. Rogers</u>**.

A theme underlying Mr. Rogers's pleadings appears to be that it is simply unfair to have his claim dismissed at this juncture, after mandatory disclosures, but before the usual forms of discovery have been undertaken. Mr. Rogers's claim of unfairness badly misses the mark.

The present action came to this Court after an arbitration hearing at which five (5) witnesses testified under oath (including Mr. Rogers and Ms. Whitney), 23 exhibits were admitted, and both the Union and Company were represented by counsel. The Union's counsel cross-examined Ms. Whitney for some 35 pages of the 223 page hearing transcript. (<u>See</u> Exh. 3 to Defendant's Appendix). In addition, another of Mr. Rogers's attorneys cross-examined Ms. Whitney at the hearing on the Wareham Police's criminal complaint against Mr. Rogers. (<u>See</u> Exh. 5 to Defendant's Appendix).

The repeated questioning of Ms. Whitney concerns a matter which has taken a significant emotional toll on her, as she testified at the arbitration:

> I - I can't say that I've ever been through anything like this. It's -- I don't -- I don't, I didn't and I still to this day don't understand why I was targeted. The impact that they had on me basically was that I was fearful. My kids were worried about me. My boyfriend, Scott, was concerned. I was looking in the rearview mirror all the time. I seeked [sic] the help of the employee assistance director in setting me up with some therapy to get through it and was also referred to a doctor to get some medication so that I would start sleeping at night because I wasn't sleeping. It almost -- the calls themselves almost made me somewhat feel as though I had been raped at times and --

(Exh. 3 to Defendant's Appendix, at 75-76). Whitney further testified that the harassing calls ceased once Mr. Rogers was identified. (<u>See</u> Exh. 3 at 76).

Ms. Whitney should not be required to submit to a third round of cross-

9

examination by the third attorney representing Mr. Rogers's interests regarding an extremely unpleasant and frightening time in her past, especially when Mr. Rogers's remaining two claims suffer from central defects as a matter of law that will still be present after the proposed depositions. Such questioning will only serve to intensify her experience of being a victim.

**C.**     **Conclusion**

Even if, in the normal exercise of judicial caution, one might be inclined to allow discovery to proceed, this is not the normal case. Mr. Rogers, through his labor union, pursued through arbitration the propriety of his termination -- and lost. Just two (2) of Mr. Rogers's ten (10) claims withstood a motion to dismiss, but due to certain glaring deficiencies in even these claims, Ms. Whitney has filed an early summary judgment motion, focusing on discrete issues. In response, Mr. Rogers invokes Rule 56(f), without even assaying to identify a triable issue of material fact. Even under the most generous reading of the rule, Mr. Rogers's blend of conclusions, implausible arguments and concessions fails to identify any "specific facts that could be developed through [the] discovery" he seeks to undertake, see Taylor v. Gallagher, 737 F.2d at 137, and thereby properly invoke Rule 56(f).

For all the above reasons, and the reasons set forth in the memorandum supporting the motion for summary judgment, Mr. Rogers's motion under Rule 56(f) should be denied, and Ms. Whitney's motion for summary judgment granted, with prejudice. In the alternative, Ms. Whitney prays that the motion for summary judgment be continued until such time as Mr. Rogers has deposed herself and Betty Clark, that no other discovery be permitted, and that the parties be afforded the opportunity to supplement or revise their pleadings to reflect such depositions.

Respectfully submitted,

KIMBERLY WHITNEY,

By her Attorneys,

MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666

By: /s/Robert P. Morris
    Keith H. McCown
    B.B.O. #329980
    Robert P. Morris
    B.B.O. #546052

Dated:   March 2, 2006

## CERTIFICATE OF SERVICE

    I, Robert P. Morris, certify that on March 2, 2006, this document filed electronically through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

s/Robert P. Morris
Robert P. Morris